**GRAND VICTORIA CASINO & RESORT, LP, Petitioner,**

v.

**INDIANA DEPARTMENT OF STATE REVENUE, Respondent.**

No. 49T10–0012–TA–125.

Tax Court of Indiana.

June 16, 2003.

Barton T. Sprunger, Mark J. Richards, Ice Miller, Indianapolis, IN, Attorneys for Petitioner.

Stephen H. Paul, Brent A. Auberry, Baker & Daniels, Indianapolis, IN, Attorneys for Amicus Curiae.

Steve Carter, Attorney General of Indiana, Linda I. Villegas, Ted J. Holaday,

Deputy Attorneys General, Indianapolis, IN, Attorneys for Respondent.

FISHER, J.

Grand Victoria Casino & Resort, LP (Grand Victoria) appeals from two final determinations of the Indiana Department of State Revenue (Department), which denied Grand Victoria's claims for refund of Indiana's gross retail and use tax (sales tax) for 1996, 1997, 1998, and 1999 (the years at issue). The case is before the Court on the parties' cross-motions for summary judgment. Grand Victoria's motion for summary judgment raises the following issues:

I.   Whether Grand Victoria is entitled to a refund of sales tax paid on its purchase of personal property and services for its riverboat because it qualified for the public transportation exemption;

II.  Whether Grand Victoria is entitled to a refund of sales tax paid on an interstate satellite transmission in 1999; and

III. Whether Grand Victoria is entitled to a refund of sales tax it paid on the 1999 capital contribution of its riverboat.

The Department raises one issue in its motion:

IV.  Whether Grand Victoria owes use tax on its riverboat for the 1996 tax year, specifically,

   A.  Whether Grand Victoria owes use tax for the 1996 purchase of the riverboat because its tax-exempt leasing of the riverboat ceased in 1999; and

   B.  Whether Grand Victoria owes use tax for 1996 because its riverboat was unlicensed and therefore required to be registered for use in Indiana.

For the reasons stated below, the Court DENIES Grand Victoria's motion for summary judgment as to Issue I. The Court GRANTS Grand Victoria's motion for summary judgment as to Issues II and III. The Court DENIES the Department's motion for summary judgment.

## FACTS AND PROCEDURAL HISTORY

Grand Victoria is a Delaware limited partnership with its principle place of business in Chicago. It is the successor in interest to Grand Victoria Casino & Resort, LLC of Indiana (GV LLC). During the years at issue, GV LLC and Grand Victoria were licensed riverboat gaming excursion operators pursuant to Indiana Code Section 4–33 *et seq.*

The riverboat at issue in this tax appeal was originally acquired and used in Louisiana by Queen of New Orleans at the Hilton Joint Venture (Hilton Joint Venture). In January 1996, the predecessor to GV LLC contracted with Hilton Joint Venture to purchase the riverboat; it subsequently assigned the contract to a company called G.V. II, Inc. In turn, G.V. II, Inc. delivered the riverboat to Rising Sun, Indiana and leased it to GV LLC. On September 16, 1996, GV LLC obtained a riverboat owner's license in accordance with Indiana Code Section 4–33 *et seq.*, after which it began operating the riverboat as a gaming establishment on the Ohio River. For the 1996–1998 tax years, GV LLC paid sales tax on the riverboat lease payments, as well as on purchases of: fuel; navigation equipment; maintenance, repair, and safety equipment; tickets; uniforms; supplies for the riverboat pilot house; lighting; bathroom supplies; and heating and air conditioning equipment.

On January 21, 1999, as a result of a merger of G.V. II, Inc. and GV LLC, Grand Victoria was formed. At that time,

Grand Victoria received the riverboat as a capital contribution from G.V. II, Inc. and GV LLC. The partners of Grand Victoria (who were the previous owners of G.V. II, Inc.) received no cash or other property in connection with the capital contribution of the riverboat. In 1999, Grand Victoria paid sales tax on the capital contribution of the riverboat, as well as on purchases of: fuel; navigation equipment; maintenance, repair, and safety equipment; tickets; uniforms; supplies for the riverboat pilot house; lighting; bathroom supplies; and heating and air conditioning equipment.

On December 30, 1999, Grand Victoria filed a claim for refund with the Department, seeking a refund of sales tax for 1996 in the amount of $378,239 plus interest.[1] On March 16, 2000, Grand Victoria filed three more claims for refund with the Department, seeking refunds of sales tax paid for 1997, 1998, and 1999, in the amounts of $326,778, $855,759, and $2,128,013, respectively, plus interest.[2] In all, Grand Victoria sought $3,688,949 in refunds.

In the fall of 2000, the Department issued two final determinations in which it denied $2,390,871 of Grand Victoria's claims for the years at issue. Consequently, on September 15, 2000, Grand Victoria initiated an original tax appeal. On October 17, 2002, Grand Victoria filed a motion for summary judgment. On January 14, 2003, the Department filed a cross-motion for summary judgment. The Court held a hearing on both motions on April 22, 2003. Additional facts will be supplied as needed.

## ANALYSIS AND OPINION

### Standard of Review

This Court hears appeals from denials of refunds by the Department *de novo* and therefore is not bound by the evidence or the issues raised at the administrative level. IND.CODE § 6–8.1–9–1(d) (Supp.2002); *Chrysler Fin. Co., LLC v. Indiana Dep't of State Revenue*, 761 N.E.2d 909, 911 (Ind. Tax Ct.2002), *review denied.* Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). Cross-motions for summary judgment do not alter this standard. *Chrysler Fin.*, 761 N.E.2d at 911.

### Discussion

The Court will first address the issues raised in Grand Victoria's motion for summary judgment. It will then address the issue raised by the Department in its motion.

### I. Transportation exemption

■ The first issue is whether Grand Victoria is exempt from sales tax paid on its purchase of personal property and services for the riverboat. Grand Victoria argues that because it transported people by water for consideration, it qualified for the public transportation exemption, which provides, "Transactions involving tangible personal property and services are exempt from [sales] tax, if the person acquiring the property or service directly uses or consumes it in providing public transporta-

---

**1.** In particular, Grand Victoria sought a refund of sales tax that GV LLC paid on the riverboat's lease payments and its purchases of personal property and services.

**2.** Grand Victoria's 1997 and 1998 claims sought a refund of the sales tax GV LLC paid on the riverboat lease payments and its purchases of personal property and services for those years. Grand Victoria's 1999 claim sought a refund of sales tax it paid on purchases of personal property and services, the sales tax it paid on the capital contribution, and the sales tax it paid on the acquisition of commercial broadcast services that were transmitted to Indiana from Kentucky.

tion for persons or property."[3] IND.CODE § 6–2.5–5–27 (1998). The Department, on the other hand, argues that Grand Victoria is not entitled to the exemption because it does not transport people.

As this Court has previously stated, "it is well-settled that tax exemptions are to be strictly construed against the taxpayer, and the taxpayer bears the burden of proving entitlement to the exemption." *Tri–States Double Cola Bottling Co. v. Indiana Dep't of State Revenue*, 706 N.E.2d 282, 283 (Ind. Tax Ct.1999) (citation omitted). "However, the Court must avoid reading an exemption provision so narrowly so as to exclude cases rightly falling within the ambit of that exemption provision." *Id.* at 284. For purposes of the exemption, the Department has defined "public transportation" as "the movement, transportation, or carrying of persons and/or property *for consideration* by a common carrier, contract carrier, household goods carrier, carriers of exempt commodities, and other specialized carriers performing public transportation service for compensation by ... water[.]" IND. ADMIN. CODE tit. 45, r. 2.2–5–61(b) (2001) (emphasis added). *See also Meyer Waste Sys., Inc. v. Indiana Dep't of State Revenue*, 741 N.E.2d 1, 9 (Ind. Tax Ct.2000) (holding that to qualify for the exemption, the movement, transportation, or carrying must be for consideration), *review denied.*

The undisputed facts show that during the years at issue, Grand Victoria charged adults $9 to purchase an admission ticket to the riverboat. After passengers boarded the riverboat, it left its dock for a four-hour roundtrip cruise along the Ohio River. Accordingly, Grand Victoria argues that in exchange for valuable consider-

ation, it transported passengers. The Court disagrees.

During the years at issue, the law *required* Grand Victoria to leave dock before gaming could begin. *See* IND.CODE § 4–33–9–2 (1998) (providing that "gambling may not be conducted while a riverboat is docked") (amended by Pub.L. 192–2002 § 16(ss)). "[I]t is a general principle of law[ ] that a promise to one to pay him, if he will do what he is already bound to do by law ... is without consideration [ ] and cannot be enforced." *Ritenour v. Mathews*, 42 Ind. 7, 14 (1873). *See also Lincoln Operating Co. v. Gillis*, 232 Ind. 551, 114 N.E.2d 873, 877 (1953) (holding that "there could be no consideration for doing an act which [a person] had a legal duty to perform"). Because the law required Grand Victoria to leave dock before gaming could begin, its movement of passengers was not consideration in exchange for the $9 ticket purchased by each passenger to board the riverboat. *See id.* Consequently, Grand Victoria does not satisfy the Department's definition of "public transportation" for purposes of the exemption. *See* 45 IAC 2.2–5–61(b); *Meyer Waste Sys.*, 741 N.E.2d at 9. The Court therefore DENIES Grand Victoria's motion for summary judgment as to this issue and GRANTS summary judgment to the Department.

## II. Telecommunications services

■ The second issue is whether Grand Victoria is entitled to a refund of sales tax it paid on the purchase of a satellite commercial broadcast that originated in Kentucky and terminated in Indiana. The Department claims that the broadcast is an "intrastate" transmission and is therefore taxable under Indiana Code Section 6–2.5–4–6. Grand Victoria, on the other hand,

---

**3.** Grand Victoria also claims the sales tax it paid on the capital contribution of its riverboat and on the riverboat lease payments falls under the transportation exemption. However, given the Court's holding in Sections III and IV, *infra*, it need not reach this issue.

argues that the broadcast is an "interstate" transmission and therefore is not subject to sales tax. Grand Victoria is correct.

Indiana levies sales tax on the purchase of intrastate telecommunication services, meaning "the transmission of messages or information by or using wire, cable, fiber optics, laser, microwave, radio, satellite, or similar facilities." IND.CODE § 6–2.5–4–6(a) (1998). The law provides that the transmission in question must be "intrastate," which means that the transmission must originate and terminate within Indiana. *See* IND.CODE § 6–2.5–4–6(b)(1). *See also Chicago & E.I. Ry. Co. v. Pub. Serv. Comm'n of Indiana*, 205 Ind. 253, 186 N.E. 330, 336 (1933) (holding that "[i]f the movement [of a commodity] is wholly within the state, it is intrastate"), *cert. denied; City of South Bend v. Martin*, 142 Ind. 31, 41 N.E. 315, 317 (1895) (noting that commerce and trade that are "entirely confined within the boundaries of the state of Indiana" are "intrastate"); BLACK'S LAW DICTIONARY 263 (7th ed.1999) (defining "intrastate commerce" as "[c]ommerce that begins and ends entirely within the borders of a single state").

The parties agree that the transmissions in question originated in Kentucky and terminated in Indiana. Thus, the services in question are not intrastate transmissions; they are interstate.[4] *See* IND. ADMIN. CODE tit. 45, r. 1.1–3–3(b) (2001) (defining "interstate commerce" as "business conducted by the taxpayer between Indiana and another state or a foreign country"); *Chicago & E.I. Ry. Co.*, 186 N.E. at 336 (holding that "if that movement [of a commodity] is to or through another state, it is interstate"). Because the telecommunication services in question are not intrastate transmissions, Indiana's sales tax does not apply to them. Thus, Grand Victoria is entitled to a refund of sales tax it paid on the purchase of the satellite broadcast. Accordingly, the Court GRANTS Grand Victoria's motion for summary judgment on this issue.

### III. Capital contribution

■ The third issue is whether Grand Victoria is entitled to a refund of the sales tax it paid on the 1999 capital contribution of its riverboat. Grand Victoria contends that because the capital contribution was a transfer of property without consideration, it does not constitute selling at retail and therefore is not subject to sales tax. The Department concedes. (Resp't Mem. in Opp'n to Pet'r Mot. for Summ. J. at 11–12.) Because the capital contribution was a transfer of property without consideration, the Court holds that it was not a retail sale subject to sales tax. *See Monarch Beverage Co., Inc. v. Indiana Dep't of State Revenue*, 589 N.E.2d 1209, 1214 (Ind. Tax.Ct.1992) (holding that for purposes of the sales tax, a retail sale necessarily involves the transfer of property for consideration). Accordingly, the Court

---

4. The Department argues that because the transmissions in question are rebroadcast to Indiana by a satellite in space, ambiguity is created as to the meaning of an "intrastate" transmission under Indiana Code Section 6–2.5–4–6(b)(1). (*See* Resp't Mem. in Opp'n to Pet'r Mot. for Summ. J. at 32–33.) More specifically, the Department argues that the transmissions in question are not interstate or intrastate, but "cosmic." The Department contends that because the law taxes "satellite" transmissions, the only solution that will save Indiana Code Section 6–2.5–4–6(b)(1) from nullification is for the Court to construe the term "intrastate" so as to encompass "cosmic" transmissions from satellites. The Department's "cosmic" argument is, like the cosmos, amorphous. Indeed, the Department's concentration on satellites misses the point, namely, that the transmissions in question originated in Kentucky—not the cosmos—and terminated in Indiana. Therefore, the transmissions in question are interstate transmissions.

GRANTS Grand Victoria's motion for summary judgment on this issue.

## IV. Use tax

■ In spite of its concession that the capital contribution was not subject to sales tax, the Department proposes an alternative legal theory in its cross-motion for summary judgment. In effect, the Department argues that Grand Victoria's entitlement to a refund of the sales tax it paid on the capital contribution is offset because it really owes use tax on the riverboat.[5] More specifically, the Department asserts that while the leasing of a riverboat is typically tax-exempt under Indiana Code Section 6–2.5–5–8,[6] Grand Victoria lost this exemption when its predecessors, GV LLC and G.V. II, Inc., merged in early 1999. *See* IND.CODE § 6–2.5–3–4(b) (1998) (providing "[i]f a person issues a [sales] tax exemption certificate for the acquisition of tangible *personal property* and subsequently uses, stores, or consumes that property for a nonexempt purpose, then the person shall pay the use tax" (emphasis added)). Grand Victoria, on the other hand, contends that the Department's argument is inapplicable because, during 1999, its riverboat was classified by statute as "real property" and, therefore, was out-

side the ambit of Indiana Code Sections 6–2.5–3–4(b) and 6–2.5–5–8. Grand Victoria is correct.

Article 2.5 of the tax code (the sales and use tax statutes) deals primarily with transactions involving personal property. The Legislature, however, has not defined "personal property" for the purpose of Article 2.5. *See generally* I.C. § 6–2.5 *et seq.* Consequently, the Court looks to Article 1.1 (Indiana's property tax code) for the definition of "personal property." *See UACC Midwest, Inc. v. Indiana Dep't of State Revenue*, 667 N.E.2d 232, 237 (Ind. Tax Ct.1996) (stating that where the Legislature has not defined a term within a specific article of the tax code, the Court may consider a statutory definition of the term as it is used in another article of the tax code).

Under Article 1.1 of the tax code, the Legislature has defined "personal property" as "all other tangible property [ ] *other than real property* [.]" IND.CODE § 6–1.1–1–11(a)(6) (1998) (emphasis added). "Real property," on the other hand, is defined, *inter alia*, as "a riverboat licensed under the provisions of IC 4–33[.]"[7] IND.CODE § 6–1.1–1–15(5) (1998). Accordingly, be-

---

5. Indiana imposes sales tax "on retail transactions made in Indiana." IND.CODE § 6–2.5–2–1(a) (1998); *see also* IND.CODE §§ 6–2.5–1–2 (1998) (defining "retail transaction" as "a transaction of a retail merchant"); 6–2.5–4–1(b) (1998) (providing that a retail merchant sells at retail when he acquires and resells tangible personal property). Under Article 2.5 of the tax code, Indiana also imposes a use tax—which is the functional equivalent of sales tax—on the acquisition of certain nonexempt tangible personal property that escapes sales tax, usually because the property was acquired in a transaction that occurred outside of Indiana. *See Rhoade v. Indiana Dep't of State Revenue*, 774 N.E.2d 1044, 1047–48 (Ind. Tax Ct.2002).

6. "Transactions involving tangible *personal property* are exempt from [sales] tax if the

person acquiring the property acquires it for ... leasing in the ordinary course of his business without changing the form of the property." IND.CODE § 6–2.5–5–8 (1998) (emphasis added).

7. Although the law refers to the licensing of riverboats, the Indiana Gaming Commission actually licenses persons to operate, supply, or work on riverboats; it does not license the riverboats themselves. *See* IND.CODE §§ 4–33–2–14; 4–33–2–15; 4–33–2–18 (1998). Thus, the Legislature's reference to licensed riverboats is shorthand to signify the various licenses needed to operate a riverboat as a gaming establishment pursuant to Indiana Code Section 4–33 *et seq.*

cause a licensed riverboat is classified as "real property," it is necessarily excluded from the definition of "personal property." *See* I.C. §§ 6–1.1–1–11(a)(6); 6–1.1–1–15(5); *UACC Midwest*, 667 N.E.2d at 237. *See generally* I.C. § 6–2.5 *et seq.* The parties agree that in 1999, the riverboat was licensed under the provisions of Indiana Code Section 4–33 *et seq.* Thus, in 1999, the riverboat was classified by statute as real property, not personal property. *See* I.C. § 6–1.1–1–15(5). Therefore, the imposition of use tax under Indiana Code Section 6–2.5–5–8 had no application to the riverboat at that time. *See* I.C. § 6–2.5–5–8. *Cf.* I.C. § 6–1.1–1–15(5).

■ This, however, does not end the matter, because from April 1996 to September 1996, Grand Victoria's riverboat was in Indiana but was *not* licensed under the provisions of Indiana Code Section 4–33 *et seq.* Consequently, the Department argues that because the riverboat was not licensed for these six months, it did not satisfy the statutory definition of "real property" under Indiana Code Section 6–1.1–1–15(5). As a result, the Department contends that the riverboat was personal property subject to Indiana's use tax under Indiana Code Section 6–2.5–3–2(b). That statute imposes use tax on the "storage, use, or consumption of a ... watercraft" if the watercraft "(1) is acquired in a transaction that is an isolated or occasional sale; and (2) is required to be titled, licensed, or registered by this state for use in Indiana." IND.CODE § 6–2.5–3–2(b) (1998).

The parties agree that the riverboat was acquired in a transaction that was an iso-

lated or occasional sale. Thus, the Court must determine (1) whether an unlicensed riverboat satisfies the Legislature's definition of real property, and, if not, (2) whether a riverboat is a watercraft required to be registered by the State for use in Indiana.

Our Supreme Court has said, "It is primarily for the Legislature to determine the classification [of the subjects of taxation], and is never a judicial question unless the classification *under no circumstances* can be viewed as reasonable. When the classification in a law is questioned, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts must be presumed." *Lutz v. Arnold*, 208 Ind. 480, 193 N.E. 840, 847 (1935) (emphasis added) (internal punctuation omitted). Here, the Legislature has expressly classified a riverboat as "real property" when it is "*licensed* under the provisions of IC 4–33[.]" I.C. § 6–1.1–1–15(5) (emphasis added). The Legislature could have classified *all* riverboats—licensed and unlicensed—as real property, but it did not.[8] *See Lutz*, 193 N.E. at 848 (stating that "the power of the state to classify [the subjects of taxation] under section 23 of article 1 of the Indiana Constitution must be conceded"). Accordingly, the Court holds that only those riverboats licensed under Indiana Code Section 4–33 *et seq.* are real property pursuant to Indiana Code Section 6–1.1–1–15(5). *See* I.C. § 6–1.1–1–15(5); *Lutz*, 193 N.E. at 847–48. *See also Miller Village Properties Co., LLP v. Indiana Bd. of Tax Review*, 779 N.E.2d 986, 989 (Ind.Tax.Ct. 2002) (stating "the enumeration of certain

8. It is reasonable to presume that unlicensed riverboats do not vindicate the policy for allowing riverboat gaming in the first place: "to benefit the people of Indiana by promoting tourism and assisting economic develop-

ment." IND.CODE § 4–33–1–2 (1998). Such a presumption sustains the Legislature's refusal to classify unlicensed riverboats as real property. *See Lutz v. Arnold*, 208 Ind. 480, 193 N.E. 840, 847 (1935).

things in a statute implies the exclusion of all others"); *Subaru–Isuzu Automotive, Inc. v. Indiana Dep't of State Revenue*, 782 N.E.2d 1071, 1077 (Ind.Tax.Ct.2003) (stating that the Court "applies the tax laws as the Legislature writes them"). Because Grand Victoria's riverboat was not licensed under Indiana Code Section 4–33 *et seq.* from April 1996 to September 1996, it did not satisfy the Legislature's statutory definition of "real property" during that period.[9]

The next question is whether an unlicensed riverboat is a watercraft required to be registered for use in Indiana. The Department argues that riverboats fall within the ambit of Indiana Code Section 9–31–3–1, which states, "[E]very *motorboat* principally used on the waters of Indiana must be registered [with the Bureau of Motor Vehicles] and numbered." IND.CODE § 9–31–3–1 (1998) (emphasis added). However, the Department has not submitted any legal authority showing that the Legislature or the Bureau of Motor Vehicles regards riverboats as motorboats for the purpose of Indiana's registration requirement.[10] Because the Department has not supported its argument with sufficient legal authority, it is not entitled to judgment as a matter of law on this issue. Accordingly, the Court DENIES the Department's motion for summary judgment.[11]

## Conclusion

For the aforementioned reasons, the Court DENIES Grand Victoria's motion for summary judgment as to Issue I and GRANTS summary judgment to the De-

---

9. Because a licensed riverboat is real property, *see opinion supra*, lease payments on such a riverboat would not be subject to sales tax. However, given the Court's holding that an unlicensed riverboat does not satisfy the statutory definition of "real property," the question arises whether Grand Victoria is entitled to the transportation exemption for sales tax paid on the riverboat lease payments and on the purchase of personal property and services for the six month that the riverboat was unlicensed. The parties do not address this question in their briefs.

10. Grand Victoria submitted evidence that since 1996, Indiana has required riverboats to be registered with the U.S. Coast Guard only. (Aff. of Larry Buck at ¶ 4.) The Department, on the other hand, submitted a copy of INDIANA GENERAL BOATING GUIDELINES (2001) and a copy of an Indiana Department of Natural Resources memorandum titled "USCG's New Vessel Documentation System" (March 26, 2002). The Department argues that these documents indicate that riverboats are required to be registered by Indiana. However, because these documents post-date the years at issue, they are not relevant to the question at hand.

In the alternative, the Department argues that (1) riverboats are watercraft, (2) motorboats are watercraft, therefore, (3) riverboats are motorboats and, thus, the registration requirements apply. However, the Department's argument falls prey to the fallacy of the undistributed middle. "The nature of this fallacy becomes more obvious in the following example: Cats are mammals. Dogs are mammals. Therefore, cats are dogs." *State v. Star Enterprise*, 691 So.2d 1221, 1229 n. 8 (La.App. 4 Cir.1996) (citing RUGGERO J. ALDISERT, LOGIC FOR LAWYERS 10–5 (1992)), *aff'd*. The Department's arguments are without merit.

11. The Department also argues that because Indiana Code Section 6–1.1–1–15(5) does not expressly exempt riverboats in general from sales tax, then riverboats must, as watercraft, be subject to that tax. (Resp't Mem. in Opp'n to Pet'r Mot. for Summ. J. at 17–18.) However, that statute pertains to licensed riverboats only, which are removed from the ambit of Article 2.5. *See opinion supra.* Furthermore, the general rule is that tax-levying statutes are to be construed against the Department. *Consol. Coal Co. v. Indiana Dep't of State Revenue*, 583 N.E.2d 1199, 1201 (Ind.1991). To assume-as the Department does-that tax-levying statutes should be construed against the taxpayer absent an express exemption would stand this rule on its head.

partment. The Court GRANTS Grand Victoria's motion for summary judgment as to Issues II and III. The Court DENIES the Department's motion for summary judgment. The Court REMANDS this case to the Department to determine, consistent with this opinion, the amount of refund owed to Grand Victoria.